Good morning, your honors. Matt Toppin, and I represent the appellate, and Jason Callicutt for the appellee, Village of Indian Head Park. How much time does the appellant want for rebuttal? Three minutes is fine. Okay, let's proceed. May it please the court, there are two issues in this appeal. The first is whether the public disclosure bar in the Illinois False Claims Act applies to records obtained under FOIA from the defrauding government entity. And the second issue is whether tort immunity applies to written fraud by the government in connection with payments under a contract. We would need to prevail on both of those issues in order to change the result here, and for each of them, though, there are multiple reasons why we believe the circuit court should be reversed. I'm going to start with the public disclosure bar question under the False Claims Act, and there are three reasons why that should be reversed. The first is that FOIA responses at issue here were not state reports. The second issue is that FOIA responses are not reports at all, and even if we are incorrect on both of those points, and we don't believe we are, that the relator here is an original source of the information due to his own investigation. If we prevail on any of those, then the circuit court should be reversed. Let me start with the state report question. We'll talk later, I'm sure, about the Schindler Elevator case, which interpreted the U.S. False Claims Act. The issue about what qualifies as a state report was not decided by Schindler Elevator, so that's a clean question. There is no decision by the U.S. Supreme Court on that issue. It simply wasn't something that they had to address. We think that the circuit court's interpretation of the term state report was wrong, that IHP's interpretation was wrong, because it can't include the entity who's accused of doing the defrauding. In a typical case, and actually in every case, there's going to be a state or local entity that has been defrauded, and there's also going to be some entity that committed the fraud. In the case here, that entity is another unit of government, which makes this a little bit different from maybe a more common False Claims Act case, but nothing that's precluded by anything in the statute. The interpretation of state report to include reports from the entity accused of defrauding the entity that's been defrauded, it doesn't honor the use of the term throughout the statute. Cases are clear that you have to try to interpret the same term consistently throughout the statute, and the circuit court basically said, well, state is broadly defined as any of these units of government, and so if the report comes from any unit of government that fits that categorical description, then therefore there can be a public disclosure bar. The problem with that is if you use that same approach elsewhere in the statute, you get results that simply don't make sense. The public disclosure bar, for example, says, quote, the court shall dismiss an action under this section unless opposed by the state. So if you interpret state to mean any unit of local or state government, it means as long as some unit of government opposes dismissal, then there wouldn't be a dismissal. That doesn't make sense in the context of the statute. The same is true under the original source exception. If the person has, quote, voluntarily provided the information to the state before filing an action under the section, then the original source exception can potentially apply. Same thing. It can't be the case that just disclosing it to any unit of government is sufficient under the original source provision. And so law is clear. You have to interpret all these. Where the same term is used throughout statute, you need to try to use it consistently. There's plenty of early cases directly on that. And I would also point to the Glazer case, which has been cited, I think, by both sides, which says, quote, we now conclude that this places too much importance on a dictionary interpretation of the phrase to the exclusion of other significant interpretive considerations. And then it goes on to say that doing otherwise, quote, would yield baffling results if we read the term literally without regard to context. That's a different provision of the False Claims Act, but it's still the False Claims Act, and as a matter of general statutory interpretation, it certainly would hold. So moving on from the context in which the term is used, we should also look at the legislative history here. Because what the circuit court did, and if this court affirmed what we would be doing, is basically undoing the legislative change that was specifically done in response to the Graham County decision. The Graham County decision interpreted the term administrative reports in the federal FCA by the U.S. Supreme Court and interpreted it to include state and local reports. Congress didn't like that result, and Congress amended the federal statute to specifically say federal reports instead of administrative reports. The state then followed suit and made a corollary change in the Illinois FCA, changing administrative reports to state reports. So if the circuit court's reasoning was to hold, we would be right back to the Graham County decision. The reason that was changed was because Congress didn't like the result that you could base a public disclosure bar off of information that came from some other unit of government other than the one that was being defrauded. It doesn't make sense. That's not why we have a public disclosure bar. And so if you affirm the circuit court's reasoning, we're basically now at odds in the way we've interpreted the statute with the way that Congress had amended the statute federally and that the General Assembly here had revised the statute to match up with. And then lastly, the purpose of the public disclosure bar is not served by the way that this was interpreted by the circuit court. The purpose of the public disclosure bar is to prevent an unwarranted windfall. It's not to prevent relators from doing an investigation and finding information that was not in the possession of and was not known to the government entity that had been defrauded. I mean, the whole point here is to say that there are instances in which the public has a right to bring these claims on behalf of their own government when their own government hasn't or won't act it. And here, where Lyons Township did not have possession of the information that the relator here found through his own investigation, there's no purpose served consistent with the public disclosure bar to say that this claim can't go forward. So for each of those reasons, we don't think that the public disclosure bar applies because these aren't state reports. The next question is whether they're even reports in the first place. And that's the question that was ruled upon in the Schindler Elevator case in which a majority, and I apologize, we said 5-4 in our brief, Justice Kagan refused. So it's actually 5-3 in the briefs in front of the U.S. Supreme Court. But the U.S. Supreme Court said a response to a FOIA request can qualify as a report. If you look at the reasoning by the dissent, I think it makes far more sense. IHP takes the position here that you are bound by the Schindler Elevator decision, and you are not bound by the Schindler Elevator decision. The Levenstein case, for example, decided by IHP, says, we presume that when a legislature passed the act, it was aware of federal court opinions that had construed the FCA. Thus, we also give weight to federal court opinions that interpreted the federal law before the act was passed. So you can give weight to it, but it's not binding upon you. And weight is really only to be given when a decision came down before the General Assembly passed the statute, which is not the case here. Are you familiar with the Moore case in the Third Circuit Court of Appeals? I am not, Your Honor. I apologize. I think you ought to look at that. It has a great discussion about the Federal False Claims Act. It's at 812 Federal 3rd, page 297. Great discussion on what you're talking about right now. Go ahead. Proceed. Sure. So, and I apologize. I'm not familiar with the case, but I would expect it didn't hold that Illinois courts are not free to disagree with federal courts if they don't agree with the reasoning that was applied. And here, I think the reasoning that was applied by the majority doesn't make any sense because it essentially distinguishes between records that are gotten from the government with or without a cover letter transmitting a response to an employee request. And what they said was, well, when the government issues a letter saying, here are the records responsive to your FOIA request, that is now a government report. They deliberately left open the question of, well, what if the records were produced and there wasn't a cover letter? Because you can't really reconcile that with the reasoning. And it doesn't make sense to say that simply because there's a cover letter attached to records  The other thing that I think is really important to keep in mind is that the report can't mean just any information. And we don't have any record here that was produced by anybody that says, under FOIA, that said we've investigated and here is the fraud. It doesn't lay it out. I mean, what the relator here did was come by information that he connected the dots to show the fraud, and that's the fundamental difference here. It's to say the report is just any information is much too broad, and that's essentially what the majority opinion was in Schindler, that even if it doesn't actually lay out the fraud and show that there was a fraud, it can still be a report. I think it's an overly technical description of the term report, and it's not consistent with the purpose of the public disclosure bar, which is to prevent just any person from copycatting work that's already been done and that's already shown that there's been a fraud. But if that hasn't been done in the first instance, then the relator ought to be able to conduct that investigation himself and bring his claim on behalf of his government. So how would you go about narrowing the definition of a state report? What I would look to is the second circuit's interpretation that was reversed in Schindler, and there was, quote, a document that synthesizes information in an investigatory context to serve some end of the government. So I think that's where you can distinguish report from just any document conveying information, that it's in an investigatory context. It synthesizes the information and draws a conclusion. That, I think, is a more natural read of the word report as opposed to simply just conveying any information. And I think it's also important, and this probably gets connected more with the phrase substantially the same allegation of transactions, which is part of the public disclosure bar, is that the report needs to actually disclose the fraud, not just some information that could be used to determine that there was a fraud. The last point is that even if this was a report, even if it was a state report, the relator should qualify as an original source, which is an exception to the public disclosure bar. The relator's case, for example, which I think both sides have cited, makes it clear that an independent investigation by a relator can potentially qualify as an original source. And it specifically talks about that. It says, quote, the typical Quintanim plaintiff is a whistleblower at a defense contractor's plant with inside information about a fraud being perpetrated against the federal government. This case does not involve that sort of traditional insider information. Lamers simply walked the streets of Green Bay observing the buses in action. The information he gleaned from this exercise was readily available to government investigators or even to members of the general public with an unusually keen interest in public transit procedures. And despite that, the court found that Mr. Lamers was an original source of the information. Quote, in our case, we think it's clear that Lamers provided a service to the FTA, which is the defrauded federal agency, by keeping an eye on how the city's practices matched up to its statements. He may be viewed by some as a bit of a busybody with his own agenda, but he's certainly not a parasite. And to a certain degree, Congress wanted to encourage busybodies who, through independent efforts, assist the government in ferreting out fraud. And that's exactly what the relator here did. And there is no appreciable difference between the relator here obtaining documents under FOIA that showed where police cars were located at particular points in time and where officers were working at a particular point in time, and the relator, Lamers, who simply observed what was going on in public streets. There's no appreciable difference between those two things. Lamers makes clear that an investigation by the relator can be enough to qualify as an original source. So even if the public disclosure brought would otherwise apply, the relator here should qualify as an original source. We want to save some time for you. Sure. I would like to do that. You haven't touched that. Yeah, I was going to briefly. You're out of time. Okay. I'm not there. Okay. Go ahead. Proceed. Sure. Let me just talk about the immunity arguments. So first, the claim here is based on a written misrepresentation. The question is, how do you interpret the term oral promise or misrepresentation? Does oral modify both of those things? We've studied cases that say where you have a leading adjective in a disjunctive set of nouns that the most natural read is to say the adjective applies to both of them. And so I think that's probably the clearest and easiest way to resolve this. Elsewhere in the statute, it does use the phrase either orally or in writing, and that wasn't used here, and so you can distinguish those two things. And really their read would result in greater immunities for promises than for misrepresentations, which I don't think really makes sense. Second, this is a claim based on a contract. The exception to immunity does not say breach of contract claims. It says claims based on contract, and there's a contract here, and the billing was pursuant to the contract. And lastly, the argument that they make about, that they lost below about the provision of information, which is far too broadly read that the Bloomingdale case was a quasi-contract case, wasn't a contract case, and it would really render the remaining provisions superfluous to say, anytime the government provides any information, there can't be any claim. That provision is really giving it things like reliance and saying, just because the government said something doesn't mean you can rely on it in that sense. Instead, there's immunity. Thank you. Yes, please, the court. Is Schindler an instructive case for us here? Yes, it is. Could you give me your name again on this? My name is Jason Calico, representing the Village of Indian Head Park. Yes. The Schindler case is instructive, and the argument that it is not a breach of contract It really ignores Illinois case law, specifically the Scorsese case and the Target case, which hold that Illinois courts look to the Federal False Claims Act to interpret the Illinois False Claims Act, because the two acts are nearly identical. Regarding the arguments on the public disclosure bar, there have been various versions of the public disclosure bar throughout the history of the act, and under the current one, the case should be dismissed where the relevant information has entered the public domain through certain channels. One of those channels is a Freedom of Information Act response, and that makes sense when you think about the goal of the public disclosure bar. The case law explains we want to encourage insiders with firsthand information to come forward, but at the same time, we want to discourage opportunistic lawsuits based on public information. The government really just has an interest in paying a relator for useful information. For example, the employee who works at a defense contractor and learns through his firsthand observations in that role that his company is defrauding the government. That's useful information, and we want to encourage him to come forward. On the other hand, we don't want to give a financial incentive to people who have no inside information of their own to go and file repeated FOIA requests looking for some colorable instance of fraud. That's not very efficient or useful. And the relator in our case helps illustrate that point. He filed repeated FOIA requests on expenses related to court appearances, on mileage driven by the Lyons Township car, on time records, on vacation days, training days, and sick days, and on policies related to report writing. It takes government time and resources to respond to those FOIA requests. Now, if a citizen wants that information to make sure that the tax revenue is being spent wisely, that's fine. That's one level of incentive. But the incentive for a quitan lawsuit is much greater and much more powerful. The citizen in that situation potentially stands to gain 30 percent of what could be a very large amount of money when you consider the trouble, damages, and penalties that may be included. So we reserve that much more powerful incentive for people who have their own firsthand inside information on fraud. From a cost benefit analysis, filing repeated FOIAs on random topics is just not a very efficient way to root out fraud. Separately, it's important to remember that this is a public disclosure bar and not a government knowledge bar. There's no requirement in the statute that the allegedly defrauded entity have actual knowledge of the relevant information in order to trigger the bar. Media reports, for example, can trigger the bar regardless of whether the allegedly defrauded entity saw those reports. But there are no media reports in this case. In this case, no, that's true. However, the point I'm trying to illustrate there is that the public disclosure bar does not turn on what the allegedly defrauded entity knew or didn't know or whether it already had the information in its possession. Let me ask you this. Have you read more? No, I have not. More is pretty close on point, and I gave you guys a citation. I don't know why you haven't read it. And how about Kraxenberger versus Kansas City Power and Light Company? Have you read that one? I have not. It's also a recent case on the same subject matter. I will read it again. Thank you. And I'll give you the citation on Kraxenberger. It's 756 Federal 3rd at 1075. Thank you. The relator here makes some arguments that we need to define the term state narrowly to exclude any public entity other than the one allegedly defrauded. And I think that ignores the fact that the term state is already defined in the statute itself, and it's defined very broadly to mean any government entity. And it also ignores the fact that only part of the information here came from Linus Township and the other part came from Indian Head Park, and you need the two parts to put together to see the alleged fraud. The statute was amended after the U.S. Supreme Court Grand County decision. As the relator's attorney pointed out, previously an administrative report could trigger the public disclosure process. When it was amended, does that change the concept that Schindler instructs us to? I don't believe it does because when it was amended, it was amended so that now a state report triggers the public disclosure bar, while at the same time the definition of state used elsewhere in the statute was not changed. So that definition of what is a state report was left to be very broad so that it does include any municipal entity. If the legislature had wanted to narrow the scope of the public disclosure bar, it could have said instead of administrative report, a report by the affected entity or by the prosecuting entity, and it chose not to do that. It said a state report, knowing that the definition of state that the statute uses here is very broad and includes any municipal entity, which here would include Linus Township and Indian Head Park. If you use the relator's definition of state, you're really adding an actual knowledge requirement that changes the public disclosure standard. The standard doesn't turn on whether the allegedly affected entity already had the information. It turns on whether the relevant information has crossed the threshold into the public domain through certain channels. And the relator's attorney has pointed out that you get potentially in theory some strange results if you apply that broad definition of state throughout the statute. But I think just as a practical matter, to address the two examples he gave, if an unrelated entity came into court and tried to get a court dismissed, it would still run into the standing issue that it's a stranger to the suit and really has no place to be requested. But how can the person who or the entity that committed the fraud be protected by the statute? If they're the one who gave the information, they committed the fraud, how can they then use that same statute to protect themselves, to keep themselves from being sued? It's a question of where we want to draw the line between opportunistic cases and cases based on inside information of fraud. And I think that line has shifted over time. But right now it's located such that a Freedom of Information Act response is going to trigger the public disclosure bar. The relator also argues that he should be considered an original... I'm sorry. Go ahead. When you said that. So if I'm a defrauder, all I have to do is request the Freedom of Information Act and nobody can sue? I don't know if as a defrauder you would want to do that. But if... Whatever you're saying. In theory. Right. In theory. So you can always protect yourself from stealing from people or whatever you're doing wrong. Well, you can protect yourself potentially from pre-tem lawsuits, but once you've made that information public, the entity that you've stolen from could directly recover that. Well, what if they don't? What if they don't? Then the citizen who knows it, why can't they do it? I think that's a question that probably would depend on the facts and the seriousness of the offense and the amount of money at issue. And the defrauded entity certainly would have an incentive to go after the defrauder once that is public information if the amount of money is high enough. I think the relator here, in arguing that he is an original source, is really not on point with the Lehmers v. Green Bay case. In that case, the relator was found to be an original source because he had first-hand knowledge from observing the operation of buses on city streets, and the court said that would be sufficient to consider him an original source. The difference here is the relator doesn't allege that he personally observed any officer working in Indian Head Park when he was supposed to be on the clock at Lyons, and he does not allege that he personally observed any instance of Indian Head Park keeping ticket revenue that should have gone to Lyons Township. All of the information that the relator here based his claims on was given to him by the government entities. So I don't think you can claim to be an original source when you received all of your information from other entities. The Tort Immunity Act provides a separate basis to uphold the dismissal based on the immunities for misrepresentation and the provision of information. Liability here stems allegedly from misrepresenting the number of hours worked in Lyons Township and misrepresenting the name of the complainant on the ticket so these immunities would apply. The relator does try to argue that this is a contract action and therefore the Tort Immunity Act does not apply. I think it's pretty easy to see that's not the case. If this were a contract action, the relator would not have standing to address any breach or other issue between Lyons Township and Indian Head Park because he's not a party to the contract. He also relies on a Texas case which is out of jurisdiction and obviously not binding as well as an Illinois case from 1926 to argue that oral in Section 1-106 should modify both promise and misrepresentation. Let me ask you this. If we follow the circuit court's ruling here, would it put an impingement on whistleblowers? It would potentially put an impingement on a set of cases by whistleblowers without their own inside first-hand information on fraud. It would impinge cases such as this one where there was no inside information at issue but the alleged whistleblower searched about and used multiple FOIA requests to attempt to find some instance of fraud and I think that's what the public disclosure bar seems to do. Would it also give an impetus for people to commit more frauds? I don't think that it would given that the ability of the defrauded entity to enforce is still not affected by the application of the public disclosure bar in this case. The application really just affects an outsider coming in to do an investigation and file repeated FOIA requests on various topics until he finds a culpable instance of fraud and I think the public disclosure bar has said that's not the kind of suit that we want to encourage. The Tort Immunity Act case that the relator cited in Illinois is not binding under People v. Wilson because it was issued before 1935. The much more recent case of Goldberg v. Brooks from 2011 was interpreting a similar issue, a similar immunity for negligent misrepresentation or the provision of information in Section 2-210 of the Tort Immunity Act and the First District Appellate Court in that case held that the word negligent only modified the first term, misrepresentation, and not the second term, provision of information. The use of the destructive term or stopped that modifier from applying to the second term and that same principle applies to the second term here in Section 1-106, misrepresentation. If we take, if we interpret the statute the way that you're saying that oral only modifies promise and it doesn't modify misrepresentation, then this is the way the statute reads and you tell me how this makes sense. It would then say a local public entity is not liable for an injury caused by an, a, and misrepresentation of its employee. It doesn't. There's no article there. You would apply the and only to the first term and not the second. So the and is not necessary with misrepresentation. So you're taking out the oral and the and. Yes. Do you believe that was the intent of the legislature? Knowing the case law there that says oral is destructive and it separates the two terms into two parts, I think if the legislature had had a different intent, they could have repeated the modifier or phrased the sentence differently. And for these reasons, the Tort Immunity Act provides a separate basis for upholding the circuit court's dismissal of this case. Do you have any further questions for me? Then we will stand on our brief regarding any points not orally argued this morning. Thank you. Thank you. What's your response again to the fact that the relator wasn't an original source? Well, we contend the relator is an original source because of the investigation that he performed, which is materially the same as the investigation in Labors. So while it's true that the relator here is not an insider, while it's true that he didn't work for Indian Head Park, there's no appreciable difference between the investigation he did and the investigation in Labors. And Labors makes clear that relators are not limited to people with direct firsthand knowledge. In fact, the word direct was even taken out of the statute, which implies that it should be a broader basis for what kind of knowledge a relator can acquire and still bring a claim. And the reason that this is important is that oftentimes the entity who's been defrauded, its officials are not particularly interested in broadcasting the fact that they've been defrauded. It makes it look as though they weren't doing their jobs. And that's part of the reason we have a False Claims Act is to allow relators and people who have or acquire information that shows a fraud to bring a claim on behalf of that entity because ultimately it's the taxpayers who suffer when these things happen. And the FCA acknowledges that it's not just a responsibility of the government to monitor that, that the public can do that directly as well. So we think he does qualify as an original source. Even if he isn't an original source, if you agree on reports and you agree on state reports, then we never need to get to that question in the first place. On the immunity argument, I think, as you pointed out, grammatically it doesn't make any sense. And if you read Goldberg, it's really the same thing. I mean, they looked at grammar and said what makes sense grammatically. But if this is just a close question, there's a very easy way to resolve it, which is the longstanding doctrine that says immunities are to be narrowly construed. And they're asking for a broader interpretation. So if there are even good faith arguments on both sides of this and it's not necessarily clear one way or the other, we think it is. But if you're struggling with it, then that doctrine is what ought to resolve that question in the first place. The last thing I wanted to touch on was just the information that came from Lyons Township. And all that was was the contracts and the false claims themselves. And those documents will always be in the possession of the entity that's been defrauded. There's nothing in those documents that reveals that there's any fraud at all. And if you look at Glazer, it touches on the same sort of issue, where the mere fact that there were some documents the government had, well, it distinguished just basic knowledge about the actions and the information that would actually show that it's a fraud. And so I think that's why any disclosure that came from Lyons Township is not relevant here. Thank you. Thank you very much for a very interesting case. And we're going to take that case under its own. We're going to take it short reasons.